**UNITED STATES–SOUTH WEST AFRICA/NAMIBIA TRADE AND CULTURAL COUNCIL, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF STATE, et al., Defendants.**

Civ. A. No. 81–0170.

United States District Court, District of Columbia.

July 15, 1981.

Thomas C. Henry, Washington, D.C., for plaintiff.

Patricia J. Kenney, Washington, D.C., for defendants.

## ORDER OF DISMISSAL

JOYCE HENS GREEN, District Judge.

Plaintiff United States-South West Africa/Namibia Trade and Cultural Council is a non-profit membership corporation organized pursuant to the laws of the District of Columbia. Its purposes include "the strengthening of national security, trade and cultural relationships between the people of the United States and the people of South West Africa/Namibia." It is the registered foreign agent for the Administrator-General of the Territory of South West Africa/Namibia and the Council of Ministers. The Council of Ministers was established by the nation of South Africa to assist in the administration of Namibia, which was a former League of Nations mandate of South Africa. Although plaintiff asserts in its complaint that "[t]he Council of Ministers consists of 12 members elected by the Territory's National Assembly, and together with the Assembly, are the only legitimate and duly elected representatives of the people of the Territory", Complaint ¶ 3, this contention is disputed in the world community. The United Nations has revoked South Africa's mandate over Namibia,[1] and this decision was upheld by the International Court of Justice in 1971.[2] In 1978, the Security Council declared the election of the Namibia Council of Ministers null and void.[3]

In 1976, the General Assembly of the United Nations adopted a resolution designating the South West Africa Peoples Organization (SWAPO) the "sole and authentic" representatives of the people of Namibia. Complaint ¶ 7. According to plaintiff, SWAPO is a "Soviet-bloc terrorist organization which represents no one but the leaders who established it as a means of organizing aggression against the civilian population of Namibia." *Id.* Plaintiff further alleges that since 1976 the United Nations has contributed and continues to contribute millions of dollars to SWAPO, which uses those funds to finance its terrorist activities. *Id.* Plaintiff challenges the disbursal of United States funds, as part of its assessed and voluntary contributions to the United Nations, to support SWAPO. These contributions, plaintiff argues, are in violation of Article I, Section 9, Clause 7 of the United States Constitution, providing that "[n]o

1. G.A. Res. 2145, 21 U.N. GAOR Supp. 16, U.N. Doc. A/6316 (1966); S.C. Res. 276, 25 U.S. SCOR, 1529th Meeting 1 (1970).

2. Advisory Opinion on Legal Consequences for States of the Continued Presence of South Africa in Namibia (South West Africa) Notwith-

standing Security Council Resolution 276 [1971] I.C.J.; 1971 I.C.J. Reports at 16, also ¶¶ 118, 119 and 124.

3. S.C. Res. 439, U.N. SCOR 33rd Sess. at 14, U.N. Doc. S/INF/34 (1978).

money shall be drawn from the Treasury, but in consequence of appropriations made by law" and of Article I, Section 8, Clause 18, providing that "Congress has the power to make laws which shall be necessary and proper for carrying into execution the powers enumerated in the Constitution." Plaintiff also views the contributions to SWAPO as a violation of the United Nations Charter, Chapter I, Article 1, providing that one of its purposes is to achieve the peaceful settlement of disputes without acts of aggression, and thereby a violation of 22 U.S.C. § 287e, which provides for the authorization of appropriations and the payment of expenses relating to the United Nations "such sums as may be necessary for the payment by the United States of its share of the expenses of the United Nations."

Plaintiff seeks a declaration that the actions of defendants United States Department of State and Richard V. Hennes, the Executive Director of the Bureau of International Organizations of the State Department, are in violation of the Constitution, 22 U.S.C. § 287e, and the Charter of the United Nations; and an order enjoining defendants from disbursing funds to the United Nations for the support of SWAPO and in violation of 22 U.S.C. § 287e.

Defendants have moved to dismiss on the grounds that plaintiff lacks standing, and has presented a non-justiciable political question. In considering a motion to dismiss for lack of standing, the Court must accept as true all material allegations in the complaint and construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Therefore, for the singular purpose of this discussion, it will be assumed that the Council of Ministers is the only legitimate representative of the people of Namibia, that SWAPO is a Soviet bloc terrorist organization, and that funds supplied by the United Nations, emanating in part from United States contributions, are used to support terrorist activities. In fact, the Court takes no position on these allegations, and, as will be discussed below, it would be inappropriate to do so.

In order to establish standing, plaintiff organization must show injury in fact to its interests or that of its members, which is fairly traceable to the defendants, and that there is a substantial likelihood that the relief requested will redress the injury claimed. *Warth v. Seldin, supra; Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Plaintiff claims to represent not only the Council of Ministers of Namibia, but the interests of the people of Namibia and the interests of the citizens of the United States. Plaintiff asserts a direct injury to the people it represents in the use of the assessed contributions of the United States to "finance terrorist activities and bring Namibia, its people and its valuable natural resources, under the sphere of Communist influence." Opposition to Defendant's Motion to Dismiss at 2. However, an organization cannot achieve standing by asserting an interest in a particular issue on behalf of the public generally. *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). This would permit judicial review "at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." *Id.* at 740, 92 S.Ct. at 1369. There must be a concrete and specific injury to the party seeking relief. In this case, the plaintiff Council consists of United States citizens who earn a livelihood as consultants to the interim territorial government of Namibia. Opposition to Defendant's Motion to Dismiss at 7. Although plaintiff claims that the violation of the appropriation statute by defendant is a violation of plaintiff's right to earn a livelihood, *Id.*, no further illumination of this connection has been presented. Nor has any other direct injury to plaintiff or its members, other than to its abstract interest in the fate of Namibia, been alleged. Plaintiff's contentions do not meet the re-

quirements for injury in fact set forth by the Supreme Court.

Moreover, plaintiff has not shown a substantial likelihood that the relief requested would redress the injury claimed. Assuming that the United States withdrew all or part of its contributions to the United Nations, there is no showing that the United Nations would therefore end funding to SWAPO. Even if the United Nations did cease funding SWAPO, there is no showing that SWAPO would therefore be unable to conduct the activities to which plaintiff objects. There is certainly no showing of a likelihood of impact upon plaintiff's members' livelihoods as consultants to the interim territorial government of Namibia. In sum, assuming that all of plaintiff's allegations are true, and even if plaintiff had the right to represent the interests of the Namibian people allegedly subjected to SWAPO terrorism, the effectiveness of the remedy sought is entirely speculative.

 As plaintiff does not have standing to maintain this suit, it is unnecessary to go any further. However, dismissal is also warranted because plaintiff has presented a non-justiciable political question. A question is political when its resolution has been committed by the Constitution to another branch of government. *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). There is no question that the conduct of foreign relations has been committed to the executive and legislative branches. Although there are some situations where judicial review of matters impacting upon foreign relations is appropriate, these generally involve the interpretation of statutes, executive declarations, etc., rather than the making of the kind of substantive determinations embodied in executive or congressional action in the foreign affairs field. *See Baker v. Carr, supra* at 211–214, 82 S.Ct. at 706–709. This Court would clearly be overstepping the bounds of the judicial function were it to "interpret" the Necessary and Proper Clause of the Constitution or Article I, Section 9, Clause 7 forbidding withdrawal of funds from the Treasury except "in consequence of appro-

priations made by law", or 22 U.S.C. § 287e authorizing appropriations for payments to the United Nations, to allow a decision upon the propriety of United Nations expenditures and whether the United States should withhold money from the United Nations for certain expenditures because they allegedly violate the United Nations Charter. These decisions would necessitate subsidiary inquiries into the alleged terrorism and Soviet-bloc domination of SWAPO, the question of who is the legitimate representative of the Namibian people, and what United Nations and United States policy should be towards the various groups claiming to represent the people of Namibia. Determinations less appropriate for judicial resolution can hardly be imagined.

Accordingly, both because plaintiff lacks standing to bring this action, and because it presents a non-justiciable political question, it is this 15th day of July, 1981, hereby

ORDERED, that defendant's motion to dismiss be, and it hereby is granted. This cause stands dismissed with prejudice.