**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3748
_____

FRANCIS J. PALO, INC.,
                           Petitioner

v.

SECRETARY UNITED STATES DEPARTMENT OF LABOR,
                                     Respondent
_____

Petition for Review of an Order of the Occupational
Safety and Health Review Commission
(OSHRC No. 15-2239)
Administrative Law Judge:  Carol A. Baumerich
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 25, 2018

Before: MCKEE, RESTREPO, FUENTES, *Circuit Judges*

(Filed: July 5, 2019)

_____

OPINION**
_____

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Francis J. Palo, Inc. has filed a petition with this Court to review the Occupational Safety and Health Review Commission's[1] determination that Palo violated its workplace safety guidelines. Because we find that substantial evidence supports the Commission's finding, we will deny the petition for review.

**I.**

Palo is in the business of demolishing and constructing bridges. It held a contract from the Pennsylvania Department of Transportation to demolish and reconstruct a bridge in Ridgeway, Pennsylvania. This bridge had an arched shape, and Palo's proposed reconstruction plan—reviewed and approved by the Department of Transportation—called for Palo to demolish and rebuild the bridge in halves, allowing traffic access to one half while Palo rebuilt the other. Palo's plan included a statement that "[a]t no time during the demolition process will men or equipment work on or from the component being demolished." It did not specify what equipment it intended to use.

Palo's strategy proceeded by first cutting the bridge in half longways, then cutting the first half of the bridge away from the abutments on either end of the bridge. While doing this, Palo parked a Caterpillar excavator on the half of the bridge being demolished. The excavator weighed over 90,000 pounds.[2]

---

[1] The Commission, an agency within the Department of Labor, is represented by the Secretary of the Department of Labor. For consistency with the administrative proceedings, the Court here will refer to the Respondent as the "Commission."

[2] The administrative law judge found that the excavator weighed over 90,000 pounds but did not make a finding as to the specific weight. Parties assert that it weighs approximately 101,800 pounds.

2

When Palo had finished both the horizontal and vertical cuts on one end of the bridge, and had almost completed the cuts on the other side, that first half of the bridge collapsed from its center. The excavator and two workers fell with the collapsing half. Two workers below the bridge also sustained injuries.

The Commission began an investigation after the accident. It concluded that Palo had violated Commission guidelines by parking the excavator on the bridge without ensuring the bridge had sufficient strength to support it.

Palo contested the citation, and an administrative law judge held a hearing on the issue. Palo contended that it had lacked the requisite knowledge of the violation.

At the hearing, the administrative law judge heard evidence from the Commission's expert, Mohammad Ayub. Ayub testified that, because the bridge was arched, its structure directed its load to its supporting abutments. When the bridge half was cut free from the abutments on either end, the half could no longer bear as much weight as it could before. The bridge was no longer strong enough to support the heavy excavator and collapsed under its weight. Ayub further testified that a reasonably experienced contractor should have known that the bridge's structural behavior would change when it was cut free of its abutments, and that a reasonably diligent contractor would have conducted an analysis to determine whether the bridge could sustain the excavator's weight before parking it.

Palo executives at the hearing testified that Palo had not requested any inspection reports or documentary information from the Pennsylvania Department of Transportation prior to developing its demolition plan. Executives also testified that they had not undertaken an external engineering analysis in preparing the demolition plan and had not

3

analyzed whether the bridge could hold the excavator. They testified that they reasonably relied on their experience in concluding the partially-demolished bridge could support the excavator. However, the Palo employee responsible for developing the demolition plan had only limited experience with arch-shaped bridges, and had thought the bridge's arch was decorative, not structural. That employee also testified that he had reasonably assumed that the bridge was reinforced with industry-standard rebar, and only after the bridge collapsed discovered that the bridge, built in 1912, had less rebar than expected. Ayub testified in response that, even if the bridge had rebar conforming to current engineering standards, its load-bearing capacity would still have been compromised when Palo cut the bridge from its abutments.

After hearing testimony, the administrative law judge concluded that Palo failed to engage in reasonably diligent efforts to assess the strength of the bridge. The judge found that "an experienced demolition and construction contractor should not have placed mechanical equipment like the [excavator] on the bridge without conducting an engineering analysis to ascertain whether the bridge could take the load after the abutments were cut."[3] The administrative law judge found that the information Palo possessed from the Pennsylvania Department of Transportation did not support Palo's decision to park the excavator on the bridge, and Palo's reliance on its pre-site survey and employee experience did not overcome its failure to obtain sufficient information.

---

[3] App. 36.

Palo appealed the administrative law judge's ruling to the full Commission, which declined to undertake a discretionary review, and the administrative law judge's order became final. Palo appealed that final order to this Court.[4]

## II.

The Court reviews the Commission's findings of fact for substantial evidence.[5] Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] If such substantial evidence exists, then the Court must affirm the Commission's interpretation of the evidence even if the Court "might have interpreted the evidence differently in the first instance."[7]

The Court reviews questions of law under an arbitrary and capricious standard. It reverses the Commissions legal conclusions only when they are "arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with the law."[8]

To establish the violation of a standard, the Commission must show by a preponderance of the evidence that (1) the standard applied; (2) the employer failed to comply with it; (3) employees had access to the violative condition; and (4) the employer knew or should have known of the condition through the exercise of reasonable diligence.[9] Here, the Secretary found that Palo violated the regulation found at 29 C.F.R § 1926.856(a),

---

[4] All of Palo's appeals were timely. This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 660(a).
[5] *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 204 (3d Cir. 2005).
[6] *Balsavage v. Dir., Office of Workers' Comp. Programs*, 295 F.3d 390, 395 (3d Cir. 2002).
[7] *Id.* at 395.
[8] *Sec'y of Labor v. Trinity Indus.*, 504 F.3d 397, 400 (3d Cir. 2007).
[9] *Sec'y of Labor v. ConocoPhil. Bayway Refinery*, 654 F.3d 472, 479-80 (3d Cir. 2011).

which states that "[m]echanical equipment shall not be used on floors or working surfaces unless such floors or surfaces are of sufficient strength to support the imposed load." Of the four requirements, only the last—whether Palo knew or should have known about the condition—is at issue in this appeal.[10]

The Secretary must show Palo had actual or constructive knowledge of the issue.[11] To show constructive knowledge, the Secretary must show that Palo, "with the exercise of reasonable diligence, should have known about the conditions constituting the violation."[12]

The administrative law judge had substantial evidence before her to conclude that Palo had constructive knowledge of the issue. Palo executives testified that they knew and approved the use of the excavator on the bridge. They also testified that they knew the demolition project would require Palo to cut the bridge from its abutments. They knew also that the excavator's weight was an important factor to consider when deciding to use it. Palo, however, did not take any actions to determine whether the bridge could support the excavator's weight after the bridge was cut free of the abutments. The administrative

---

[10] Palo also argues on appeal that the cited standard does not apply, because Palo was not operating the excavator when the bridge collapsed—it was not "using" the excavator. Palo did not raise this issue in its initial appeal of the administrative judge's decision to the Commission. It is therefore waived. *See* 29 U.S.C. § 660(a) ("No objection that has not been urged before the Commission shall be considered by the court [of appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). Even if it were not waived, however, it would, in any event, be inapposite. There is no question that the excavator was operated on the bridge at some point, even if it was not in use at the time the bridge collapsed. The violation is for using the excavator on a surface that could not support it; not for causing the bridge to collapse via the excavator.

[11] *Pa. Power & Light Co. v. OSHRC*, 737 F.2d 350, 354 (3d Cir. 1984).

[12] *Sec'y of Labor v. Cent. Fla. Equip Rentals., Inc.*, 25 BNA OSHC 2147, 2155 2016 WL 4088876 at *8 (No. 08-1656, 2016).

judge was also entitled to credit Ayub's testimony that a reasonable demolition contractor would know the bridge's structural behavior would change when it was cut from its abutments and would know that it could limit the bridge's ability to support the excavator.[13]

Taken together then, substantial evidence exists to support the administrative law judge's finding that Palo could have discovered through reasonable diligence that the bridge would not support the excavator's weight.

Separate from the substantive merits of the appeal, Palo also argues that the administrative law judge committed certain errors in handling evidence during the hearing. We review this issue under an abuse of discretion standard.[14] Palo asserts first that the administrative law judge allowed the Commission to object to the introduction of certain evidence, even though the Commission had not previously listed this objection in a submission made pursuant to the administrative law judge's scheduling order. Palo also contests the administrative law judge's decision to accord little weight to statements made in parties' Joint Exhibit 2.

As to Joint Exhibit 4, even if the administrative law judge did err in admitting the document, Palo has failed to show how it was prejudiced by that action.[15] Palo states broadly that "counsel prepared for a matter based upon rulings established by a judge,"[16]

---

[13] *See St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005) ("[T]he ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable.").

[14] *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 212-13 (3d Cir. 2005).

[15] *See id.* (holding that administrative law judge did not abuse discretion in failing to follow own scheduling order where there was no prejudice).

[16] Pet'r Br. at 32.

but fails to state how Joint Exhibit 4 would have affected the outcome of the proceeding. As Palo itself states, the administrative law judge admitted Joint Exhibit 2 into evidence, which "reflect[ed] what was essentially contained in the notes making up Exhibit 4."[17] Without a showing of prejudice, Palo's petition cannot be sustained.

Palo also contests the administrative law judge's decision to accord little weight to Joint Exhibit 2. The administrative law judge, however, fully explained her reasons for doing so in footnote 11 of her decision. The administrative law judge found that the statements found in Exhibit 2 were not corroborated at trial and did not address the issue of whether Palo engaged in reasonable diligence. While Palo surely disagrees with the administrative law judge as to the exhibit's importance, it does not show why this reasoning was an abuse of discretion. The Court therefore sees no reason to disturb the administrative law judge's handling of either Exhibit 4 or Exhibit 2.

### III.

For the foregoing reasons, we will dismiss Palo's petition for review.

---

[17] Pet'r Reply at 2 n2.